ABODE BUILDING MATERIALS, INC v WEBSTER

Docket No. 117664. Submitted June 18, 1990, at Grand Rapids. Decided October 2, 1990.

Gary Webster, doing business as G & G Webster Custom Builders, was building a residential home on property owned by J.C. Wedel. Wickes Companies, Inc., furnished materials to Webster for the construction. When Wickes did not receive payment for those materials, it filed suit against Webster in district court and received a default judgment in the amount of $5,285.23. At about the same time, Abode Building Materials, Inc., which had a construction lien on Wedel's property due to Webster's nonpayment for materials supplied by Abode, filed suit against Webster, Wedel, the Department of Licensing and Regulation, Wickes Companies, Inc., and others in Kalamazoo Circuit Court for foreclosure of its construction lien. Abode named the Department of Licensing and Regulation, which administers the Homeowner Construction Lien Recovery Fund, as a defendant in an attempt to recover payment of the construction lien from the fund. Wedel filed an affidavit preventing the attachment of construction liens to his property. During the foreclosure proceedings, Webster filed for bankruptcy. Wickes filed a claim in the bankruptcy proceedings upon its default judgment against Webster. After deciding that Webster did not have sufficient assets to satisfy its claim, Wickes filed a counterclaim against Abode and a cross-claim against Wedel, the department and others and moved for summary disposition claiming it was entitled to recover payment from the fund as a matter of law. The Department of Licensing and Regulation argued that Wickes had failed to make a reasonable effort to obtain payment from Webster since it did not pursue adversary proceedings in the bankruptcy court to have the default judgment declared nondischargeable. The court, John F. Foley, J., found that Wickes had made a reasonable effort to obtain payment

REFERENCES

Am Jur 2d, Bankruptcy § 800; Liens §§ 4, 65.

See the Index to Annotations under Bankruptcy and Insolvency; Liens and Encumbrances; Mechanics' Liens.

from Webster and granted summary disposition in favor of Wickes. The department appealed.

The Court of Appeals *held:*

Summary disposition was properly granted in favor of Wickes. A creditor of a bankrupt residential builder is not required to have the builder's debt declared nondischargeable in bankruptcy before the creditor is eligible to collect on its construction lien from the Homeowner Construction Lien Recovery Fund. Wickes made a reasonable effort to obtain payment from Webster and is entitled to recover payment from the fund.

Affirmed.

LIENS — CONSTRUCTION LIENS — BANKRUPT RESIDENTIAL BUILDERS — HOMEOWNER CONSTRUCTION LIEN RECOVERY FUND.

A creditor of a bankrupt residential builder is not required to have the builder's debt declared nondischargeable in bankruptcy before the creditor is eligible to collect on its construction lien from the Homeowner Construction Lien Recovery Fund (MCL 570.1203[3][g]; MSA 26.316[203][3][g]).

*Deming, Hughey, Lewis, Allen & Chapman, P.C.* (by *Gregory G. St. Arnauld* and *Amy Glass Schipper*), for Wickes Lumber Company.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Michael A. Lockman* and *Kevin Thom,* Assistant Attorneys General, for Department of Licensing and Regulation.

Before: HOOD, P.J., and HOLBROOK, JR., and NEFF, JJ.

PER CURIAM. Defendant Department of Licensing and Regulation, administrator of the Homeowner Construction Lien Recovery Fund, appeals as of right an order of the Kalamazoo Circuit Court granting summary disposition to defendant Wickes Companies, Inc., and ordering the fund to pay Wickes $5,285.23, plus interest and costs. We affirm.

In 1976, Wickes furnished materials to Gary

Webster, doing business as G & G Webster Custom Builders, for the construction of a residential home on property owned by J. C. Wedel. When Wickes did not receive payment for the materials, Wickes filed suit in district court and received a default judgment against Webster in the amount of $5,285.23.

At approximately the same time, Abode Building Materials, Inc., instituted the present cause of action for foreclosure of its construction lien on Wedel's property due to Webster's nonpayment for materials supplied by Abode. Abode named the department as a defendant, seeking to recover payment of the construction lien from the fund. Abode's complaint also named Wickes as a defendant.

Wickes filed a counterclaim against Abode and a cross-claim against J. C. Wedel, his wife, the department, and one other supplier who had furnished materials for the construction of Wedel's home. On October 1, 1987, Wedel filed an affidavit preventing the attachment of construction liens to his property, pursuant to MCL 570.1203; MSA 26.316(203).

During the foreclosure proceedings, Gary Webster filed for bankruptcy and Wickes subsequently filed a claim in the bankruptcy proceedings upon its default judgment against Webster.

On May 31, 1988, Wickes moved for summary disposition in the instant action pursuant to MCR 2.116(C)(10) claiming that, as a matter of law under § 203 of the Construction Lien Act, it was entitled to recover payment from the fund. The fund, in defending against Wickes' motion, argued that Wickes had failed to make a reasonable effort to obtain payment from Webster, as required by § 203 of the act, since it did not pursue adversary

proceedings in the bankruptcy court to have the default judgment declared nondischargeable.

The trial court found that Wickes had made a reasonable effort to obtain payment from Webster and granted summary disposition. On appeal, the sole issue raised by the department is whether § 203(3)(g) of the Construction Lien Act requires a creditor of a bankrupt residential builder to have the builder's debt declared nondischargeable in bankruptcy before the creditor is eligible to collect on the construction lien from the Homeowner Construction Lien Recovery Fund.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for the party's claim. *Ashworth v Jefferson Screw Products, Inc,* 176 Mich App 737, 741; 440 NW2d 101 (1989), lv den 433 Mich 873 (1989). The trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988). When the trial court is satisfied that it is impossible for the claim asserted to be supported at trial, the motion should be granted. *Peterfish v Frantz,* 168 Mich App 43, 48-49; 424 NW2d 25 (1988).

Section 203(3) of the Construction Lien Act sets forth the requirements which must be fulfilled before recovery from the fund may be sought. It provides in pertinent part:

> A person who seeks recovery from the fund shall establish all of the following:
> (a) That he or she would be entitled to a construction lien on a residential structure except for the defense provided in subsection (1).
> (b) That payment was made by the owner or lessee to the contractor or subcontractor.
> (c) That the contractor or subcontractor has

retained or used the proceeds or any part of the proceeds paid to the contractor or subcontractor without having paid the person claiming the construction lien.

(d) That he or she has complied with section 201.

(e) That he or she has not colluded with another person to obtain a payment from the fund.

(f) That he or she has complied with any applicable licensing acts.

(g) That he or she has made a reasonable effort to obtain payment from the contractor or subcontractor.

(h) That the contractor or the subcontractor, with whom the person claiming the construction lien contracted with, is licensed if required by law to be licensed. [MCL 570.1203(3); MSA 26.316(203) (3).]

In maintaining that the trial court erred in its finding that Wickes made a reasonable effort to obtain payment from Webster, the department posits three arguments.

First, the department argues that the Construction Lien Act was intended to protect homeowners from having to pay twice for improvements to their property. We agree. See MCL 570.1203(1) and (2); MSA 26.316(203)(1) and (2). However, MCL 570.1203(3); MSA 26.316(203)(3) also sets forth a legislative intent in establishing the fund so as to insure that vendors and suppliers do not bear the burden when a contractor, who has retained the homeowner's proceeds, fails to pay for the materials supplied or improvements made in the construction of a residential structure.

Second, the department argues that, had Wickes sought to have the debt declared nondischargeable in bankruptcy, the department could have refused to renew or reissue a contractor's license to Webster pursuant to MCL 339.2411(3); MSA

18.425(2411)(3). This section of the Occupational Code states in pertinent part:

> The department shall suspend or revoke the license of a person licensed under this article whose failure to pay a lien claimant results in a payment being made from the homeowner construction lien recovery fund pursuant to the construction lien act . . . . The license shall not be renewed nor shall a new license be issued until the licensee has repaid in full . . . the amount paid out plus the costs of litigation and interest . . . .

While the department's efforts to keep insolvent and incompetent contractors out of the construction industry are laudable, we fail to see this goal as being one intended by the Legislature in adopting the requirements of § 203 for recovery from the fund. Had the Legislature intended that claimants, at their own expense, assist the department in the disciplinary process, it would have explicitly stated that intent in the Construction Lien Act. It did not, and we note that the department fails to cite any authority in its novel interpretation of the statutory provisions.

Lastly, the department argues that Wickes should be required to obtain the exemption order in bankruptcy court to maintain the financial integrity of the fund. The Legislature expressly set forth the funding procedures by which the fund's financial integrity was to be maintained. See MCL 570.1201; MSA 26.316(201). In light of these provisions, permitting Wickes to recover from the fund is highly unlikely to have an adverse affect upon the financial integrity of the fund.

A lien claimant may sue in contract or may seek a foreclosure of its construction lien. MCL 570.1302(2); MSA 26.316(302)(2). Wickes pursued its contractual claim against Webster and per-

fected a default judgment. When Webster filed bankruptcy, Wickes filed its claim of default judgment in the bankruptcy proceedings. Since the record indicated Webster had insufficient assets to satisfy the claim, Wickes chose not to seek an exemption order in the bankruptcy proceedings but sought to foreclose its construction lien instead. We believe Wickes made a reasonable effort to obtain payment from Webster and, therefore, summary disposition was properly granted.

Affirmed.